IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LETICIA JUAREZ,<br><br>    Plaintiff,<br><br>    v.<br><br>BANK OF AMERICA,<br><br>    Defendant. | No. C 06-05834 CRB<br><br>**ORDER** |

Plaintiff Leticia Juarez ("Plaintiff") filed this action to obtain benefits under a life insurance policy issued to her husband, Javier Juarez ("Juarez"). Her husband's employer, Bank of America, now moves for summary judgment. That motion is hereby GRANTED.

## BACKGROUND

Juarez began working as an employee of Bank of America in January of 1972. (Pl.'s Decl. ¶ 4.) He worked continuously for the company for nearly three decades. (See id. ¶ 4.) In or around 2000 and 2001, his health began to deteriorate and it became clear that he would eventually have to leave the company. (Id. ¶¶ 6-7.) Yet Juarez would not become eligible for a number of benefits until he reached retirement age, at the end of 2001. (Id. ¶ 8.) As a result, Juarez apparently reached a tacit understanding with Bank of America that he would remain on the bank's employment roster until the following year. (Id. ¶ 8-9.) Juarez officially retired on June 15, 2002. (Norton Decl. ¶ 4.)

During his employment, Juarez had coverage under a group life insurance policy through Bank of America. (Pl.'s Decl. ¶ 2.) The insurance policy was available to "full-time and part-time associates for financial protection in the event of death or serious accidental injury." (Lum Decl., Ex. F, at 90.) Under the terms of the policy, coverage ended on "the last day of the month" in which "employment ends." (Id.) Accordingly, absent further action from Juarez, coverage under his policy ended on June 30, 2002, the end of the month when he officially retired.

The policy also included a provision allowing employees to "convert" their policies from the group-sponsored insurance policy, *i.e.* one procured by Bank of America on behalf of its employees, into an individual policy, *i.e.* one retained by the employees upon their departure for their own personal benefit. (Id. at 92, 95.) The policy set forth a deadline for a departing employee to make this conversion. It required employees to convert within either 31 days after the end of coverage, or within 15 days after receiving notice from the insurer of the need to convert. (Crawford Decl. Exs. B & C.) These policy terms are undisputed.

The terms of the policy were set forth in an "Associate Handbook" issued to Bank of America employees. (Lum Decl., Ex. F, at 90-97.) The bank implies that Juarez received a copy of this handbook. (See Lum Decl. ¶ 3.) His wife says that he did not, based on her observation that he "did not have a copy of the bank's Associate Handbook in his files and he never mentioned to [her] that he had such a handbook." (Pl.'s Decl. ¶ 11.) She asserts that Juarez "kept detailed files with all of his correspondence from Bank of America" and that if he "had any clue that there was anything he needed to do to maintain the life insurance policy, he would have done so." (Id. ¶¶ 10-11.) Nonetheless, it is undisputed that Bank of America sent two letters to Juarez informing him that his benefits under the policy would terminate unless he converted it. (Crawford Decl. Exs. B & C.) These letters were mailed on July 23, 2002. Under the policy, the letters gave Juarez an extension of time, until August 7, 2002, to convert. It is not disputed that Bank of America sent these letters. Nor, aside from her general statement about Juarez's state of mind, does Plaintiff dispute that Juarez received them. It is undisputed that Juarez never converted his policy. On August 27, 2002, he died.

In October of 2003, more than a year after her husband's death, Plaintiff asked to convert his policy. Bank of America denied her request. (Crawford Decl. Ex. D.) She appealed to the Bank of America Benefits Appeals Committee, which denied her appeal. (Latessa Decl. Ex. E.) Plaintiff then filed suit in San Francisco Superior Court. Her complaint set forth causes of action for "breach of contract" and "common counts." Bank of America removed the case to federal court on the ground that Plaintiff's claims are preempted by the Employee Retirement Income Security Act of 1974 ("ERISA"). Bank of America then filed a motion for summary judgment.

## DISCUSSION

The first question presented is whether Plaintiff's state-law claims are preempted by ERISA. Plaintiff recognizes that "any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted." Aetna Health Inc. v. Davila, 542 U.S. 200, 209 (2004). Nonetheless, she argues that her claims--which rest on the theory that Bank of America breached an implied contract and the covenant of good faith and fair dealing in failing to provide him with the information he needed to convert his policy--are exclusive to the realm of California law and are therefore not preempted.

The Court disagrees. The insurance policy was unquestionably issued in connection with an employee benefit plan, and is therefore governed by ERISA. Plaintiff's claims relate directly to Bank of America's obligations to Juarez under the insurance policy it issued to him. Federal courts have consistently found that such claims, whether styled as breach of contract, as a breach of implied contract, or as a breach of the covenant of good faith and fair dealing, are preempted. 29 U.S.C. § 1144(a) ("[T]his chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan . . . ."); Evans v. Safeco Life Ins. Co., 916 F.2d 1437, 1439 (9th Cir. 1990) ("ERISA contains one of the broadest preemption clauses ever enacted by Congress."). A claim is preempted even if the breach alleged--here, failing to provide Juarez with adequate information so that he knew to convert his policy--is not explicitly addressed by the language of the contract or policy.

3

Ellenburg v. Brockway, Inc., 763 F.2d 1091, 1095 (9th Cir. 1985) ("The Ninth Circuit has held that ERISA preempts common law theories of *breach of contract implied in fact*, promissory estoppel, estoppel by conduct, fraud and deceit, and breach of contract." (emphasis added)). Plaintiff's state-law claims therefore must be, and hereby are, DISMISSED.

Plaintiff also styles her claims, and Bank of America perceives them, as a challenge to the Bank of America Benefits Appeals Committee's decision to deny benefits under ERISA. See 29 U.S.C. § 1132(a)(1)(B). The Court concludes that Plaintiff cannot prevail on such her ERISA challenges, either.

The Court accepts, without deciding, that an implied contract existed between Juarez and Bank of America, such that the former had an obligation to keep the latter informed about his right to convert under the policy and the steps he needed to take in order to make a conversion. The Court further accepts, without deciding, that Plaintiff may advance such a theory of implied contract, even though the question was not directly considered by the Bank of America Benefits Appeals Committee, and even though her complaint nowhere mentions such an implied contract. Even accepting all of Plaintiff's contentions, no reasonable juror could rule in Plaintiff's favor on her claim for wrongful denial of benefits. Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1103 (9th Cir. 2000).

The undisputed evidence is that Bank of America *did* inform Juarez about precisely these conversion details. It sent him two letters on July 23, 2002. (Crawford Decl. Ex. B & C.) Both letters informed him that his benefits had terminated on June 30, 2002. (Id.) Both letters informed him that he had the right to convert his policy, without medical examination, into an individual policy issued by the Metropolitan Life Insurance Company. (Id.) Both letters indicated that he had not yet made the conversion. (Id.) Both letters indicated that he had 31 days from the termination of his benefits (August 1, 2002) or 15 days from the receipt of the letter (August 7, 2002), whichever was latest, to make the conversion. (Id.) Plaintiff does not contradict that Juarez received these letters. She also does not dispute that Juarez failed to convert the policy. Her statements about Juarez's *state of mind* regarding his intent

4

1 to retain coverage under the policy, to the extent that such statements are even admissible,
2 see Fed. R. Evid. 802, are insufficient to create a genuine issue of material fact on the
3 question of whether Bank of America breached any putative obligation that it owed to Juarez.
4     Bank of America contends that this Court must review the decision to deny benefits
5 under an "abuse of discretion" standard. See Firestone Tire & Rubber Co. v. Bruch, 489
6 U.S. 101, 115 (1989). The Court makes no finding here about whether Bank of America's
7 employee benefits plan conferred "authority to determine eligibility for benefits or to
8 construe the terms of the plan" upon the Bank of America Benefits Appeals Committee. See
9 Kearney v. Standard Ins. Co., 175 F.3d 1084 (9th Cir.1999) (en banc) (quoting Firestone, 489
10 U.S. at 115). Whether reviewed *de novo* or under an abuse of discretion standard, the record
11 in this case compels the same conclusion: that Bank of America did not violate its obligations
12 under ERISA by denying her claim for benefits. As a result, Bank of America's motion for
13 summary judgment is hereby GRANTED.

## CONCLUSION

15     To the extent that Plaintiff advances a state-law claim for breach of contract and
16 common counts, her claims are preempted by ERISA and must be dismissed. Ellenburg, 763
17 F.2d at 1095. To the extent that she challenges the denial of ERISA benefits under 29 U.S.C.
18 § 1132(a)(1)(B), Bank of America is entitled to summary judgment because no reasonable
19 juror could conclude that the company breached its duty under the benefits plan to inform
20 Juarez about his right of conversion. Nissan Fire & Marine, 210 F.3d 1099, 1103.
21     **IT IS SO ORDERED.**

24 Dated: June 8, 2007     CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE